## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ann D. Lewis, on behalf of herself and all
others similarly situated,                                    Case No._____

                          Plaintiff,

v.

                                                              **CLASS ACTION COMPLAINT**

Wells Fargo Bank, N.A.,                                       **JURY TRIAL REQUESTED**

                          Defendant.

Plaintiff alleges the following upon information and belief, except as to allegations

regarding Ann. D. Lewis which are made upon Plaintiff's personal knowledge.

### INTRODUCTION

1.      This is a class action brought by the Plaintiff on behalf of all persons who

entered into reverse mortgages with Wells Fargo Bank, N.A. ("Wells Fargo") which are

currently active or were foreclosed or repaid since May 18, 2009, or, the estates of such

persons.

2.      As explained more fully below, Plaintiff brings this action for damages,

restitution and injunctive relief for Wells Fargo's inclusion of insurance premiums,

excessive servicing fees, loan origination fees, and/or similar charges in the principal

amount of its loans in violation of applicable law.

## PARTIES

3.     Ann D. Lewis ("Lewis") at all times herein relevant resided at 7065 Oak Pointe Curve, Bloomington Minnesota. She was 74 years old at the time of the subject transaction.

4.     Wells Fargo is a national bank making loans from offices located in Minnesota.

5.     This Court has personal jurisdiction over Wells Fargo because Defendant is located and doing business in this District.

6.     Venue is proper in this District because the Defendant has principal or executive offices and/or systematically and continuously does business in this District.

## SUBSTANTIVE ALLEGATIONS

7.     Lewis took out a reverse mortgage loan from Wells Fargo which closed on February 27, 2009.

8.     Wells Fargo represented the initial annual percentage rate of interest on the loan to be 2.723% per year, subject to potential adjustments based on a specified index, and Lewis agreed to pay interest at the annual percentage rate of 2.723%.

9.     The loan was evidenced by a Home Equity Conversion Loan Agreement (hereinafter "Loan Agreement") which provides in pertinent part:

> This Loan agreement shall be governed by Federal law and the law of the jurisdiction in which the Property is located.

Loan Agreement ¶ 6.4. No other choice of law was reserved in any of the loan documents. A copy of the Loan Agreement is attached hereto as Exhibit A.

10.     By agreement of the parties the loan would become due and payable in the event Lewis died or ceased to occupy the premises as her principal residence.

11.     At closing Wells Fargo assessed a "service fee set aside" of $4,870.33, and thereafter a "monthly servicing fee" of $30.00 on the loan, a total of $360 per year, as a condition to accessing funds under the loan agreement. Wells Fargo also charged a loan origination fee of $6,000.  The foregoing charges were included in the principal balance of the loan.

12.     This loan is what is known as "open-end credit" under Minn. Stat. § 47.59, Subd. 6(c)(l) which permits a creditor to assess, "in addition to the finance charges . . . permitted by this section," an "annual" charge of $50 "for the privilege of opening and maintaining an account." The "servicing fee" is such a charge and as such is limited to $50 per year. Wells Fargo has assessed Lewis a total of approximately $5,490.33 in excess annual servicing fees over the life of the loan, describing those fees as finance charges on periodic billing statements, and continues to assess additional fees each month.

13.     Because Minn. Stat. § 47.59, Subd. 6(c)(1) prohibits collecting service fees in excess of $50 per year Wells Fargo's service fees in excess of that amount must be deemed additional interest on the loan.  Additionally, Wells Fargo was not entitled to collect interest on those fees.

14.     Wells Fargo assessed an Upfront Mortgage Insurance Premium of $8,340. Wells Fargo also assessed monthly mortgage insurance premiums ("MIP") of $109.41

totaling at least $2,625.84 over the life of the loan to date each of which was listed on monthly billing statements provided by Wells Fargo as a "finance charge."

15.    The foregoing mortgage insurance charges were all included in the principal balance of the loan and constitute interest.

16.    The purpose of the mortgage insurance was to protect against a default in payments on the loan. Minn. Stat. § 47.59, Subd. 6(a)(6) allows only insurance which confers "benefits on the borrower . . . that are of a type that is not for credit" to be included in the principal amount of the loan. Mortgage insurance, because it is a type of insurance "for credit," i.e., insuring against a credit default, does not fit that definition.

17.    Minn. Stat. § 47.59, Subd. 6(b)(2) allows a financial institution to charge a fee for "credit insurance or mortgage insurance . . . if the insurance coverage is not required by the financial institution, and this fact is clearly and conspicuously disclosed in writing to the borrower, and the borrower gives specific, dated, and separately signed affirmative written indication of the borrower's desire to do so after written disclosure to the borrower of the cost of the insurance" and include that fee in the principal of the loan. The above insurance was "required," the cost was not "conspicuously disclosed," and there was no "separately signed affirmative indication" of Lewis' desire to purchase such insurance.

18.    Because Minn. Stat. § 47.59, Subd. 6(a)(6) and 6(b)(2) prohibit including the mortgage insurance premiums described above in the principal balance of the loan those fees must be deemed additional interest on the loan. Additionally, Wells Fargo was not entitled to collect interest on those fees.

19.   After closing Lewis received monthly billing statements from Wells Fargo characterizing the monthly insurance premiums and service fees as finance charges and showing a purported effective annual percentage rate on her loan in excess of 3.1% per year. As discussed below Plaintiff contends the effective interest rate on the loan was much higher.

20.   If the loan origination fee, and/or upfront mortgage insurance premium, and/or the monthly mortgage insurance premiums, and/or the excess service fees described above are excluded from the principal and treated as interest for purposes of calculating the effective annual percentage rate then the effective annual percentage rate of interest on Lewis' loan exceeds 21.75% when calculated either in accordance with applicable law and/or the U.S. Rule.

21.   If, in the alternative, the upfront mortgage insurance premium and loan origination fee are treated as a prepaid finance charge and included in principal and only the monthly mortgage insurance premiums and excess service fees are counted as interest, then as a result of compounding, the effective annual percentage rate of interest assessed by Wells Fargo, when calculated in accordance with Minn. Stat. § 47.59 and/or the United States Rule, exceed that agreed to in the loan contract.

22.   As a result of the above described conduct Lewis has been assessed interest in an amount which exceeds that which would actually have been earned had interest been assessed at 2.723% by more than $14,250.

## CLASS ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Rule 23 on the behalf

of all members of the classes described below.

24.    Plaintiff seeks certification of the following class:

> All residents of Minnesota, or the heirs or estates of such persons, who: 1)
> entered into reverse mortgage loan transactions with Wells Fargo and, were
> charged premiums for mortgage insurance and/or were charged servicing
> fees in excess of $50.00, and/or loan origination fees which amounts were
> included in the principal of their loans for purposes of calculating interest,
> and 2) whose loans remain executory or have been prepaid, refinanced or
> foreclosed since May 18, 2009.

Employees, owners and officers of Wells Fargo are expressly excluded from this Class.

This Court and its personnel are expressly excluded from this class.

25.    Wells Fargo has written hundreds of reverse mortgages in Minnesota and/or

throughout the nation. The above-described conduct by or on behalf of Wells Fargo took

place on numerous occasions within the class period pursuant to uniform company

policies and standardized practices, involved standardized loan forms and other

documents, and, upon information and belief, resulted in similar harm to numerous

customers of the Defendant in addition to the Plaintiff.

26.    The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of class members is unknown to Plaintiff at this

time, based on research and investigation, Plaintiff believes that there are more than 500

class members each of whom has been injured by paying excessive interest on their

reverse mortgage in the manner described above. Detailed information on the classes can

be ascertained through the review of publicly available records, or records maintained by

Wells Fargo and its agents, and other appropriate discovery.

27.   Plaintiff's claims are typical of the claims of the Plaintiff Class, as Plaintiff and all class members sustained similar damages arising out the same wrongful conduct by Defendant or persons acting on Defendant's behalf or persons acting under Defendant's direction and/or control.  Plaintiff will fairly and adequately represent and protect the interests of the members of the classes and has retained counsel competent and experienced in class action and consumer litigation.

28.   A class action is superior to other available methods for the fair and efficient adjudication of Defendant's uniform practices because joinder of all members is impractical as a result of numerosity and geographic dispersion.  Prosecution of separate actions by individual class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for the Defendant.  In addition, due to the vastly unequal market power between the parties, and the fact that many class members are in ongoing lending relationships with Wells Fargo, a class action may be the only way, as a practical matter, that their claims will be adjudicated.  Plaintiff foresees no significant difficulties in managing this action as a class action.

29.   Common questions of law and fact exist as to all members of the class and predominate over any question affecting solely individual class members.  Among the questions of law and fact common to the class are:

a.   Whether Wells Fargo systematically assessed fees and charges in excess of that allowed by applicable state law and included such fees in the principal amount of its loans to an extent prohibited by applicable state law;

b.   Whether Wells Fargo's conduct violates Minn. Stat. § 47.59 and/or § 48.195;

c.   Whether Wells Fargo's conduct violates 12 U.S.C. § 85;

d.   Whether the conduct described above is unconscionable and or unjustly enriches Wells Fargo;

e.   Whether the conduct described above constitutes a breach of contract;

f.   Whether Plaintiffs and class members are entitled to damages and/or equitable relief, and the appropriate measure of such damages.

## FIRST CAUSE OF ACTION
### MINN. STAT. § 47.59

30.   Plaintiff realleges paragraphs 1 through 22 above.

31.   Wells Fargo's inclusion of the insurance premiums and excess service fees described in paragraphs 15 and 18 above in the principal amount of the loan as alleged above violates Minn. Stat. § 47.59, Subd. 6(a)(6), 6(b)(2) and 6(c)(1) as well as the prohibition against collecting excess charges in Subdivision 14(a) and (b) entitling the borrower to a refund or credit of the charge. Alternatively, because those fees are not properly countable as principal, interest may not be assessed against them.

32.   Minn. Stat. § 47.59, Subd.14 (b) provides that "a borrower...is not obligated to pay a charge in excess of that allowed by this section... "

33.   The excess service fees described above exceed those allowed by the statute.

34.   If calculated in accordance with paragraph 20 above Wells Fargo has collected interest at an effective rate in excess of that permitted by Minn. Stat. § 47.59, Subd. 3 on Lewis' loan and she is entitled to recover or receive a credit for the excess.

35.    To the extent such fees may not be included in the principal of class members' loans they constitute a violation "of any provision of this section applying to collection of finance or other charges" within the meaning of Minn. Stat. § 47.59, Subd. 14(a).

36.    In the alternative to the foregoing, to the extent applicable law prohibits including the insurance premiums and/or excessive service fees described above in the principal balance of the loan then, assuming they may be lawfully collected, they must be deemed interest and when so treated they increase the effective interest rate on the loan when calculated in accordance with paragraph 20 above to levels which exceed those agreed to by the parties.  Plaintiff and members of the Class are entitled to a refund or credit of the excessive interest resulting from the fees described above pursuant to Minn. Stat. § 47.59, Subd. 14(b) and an award of attorneys' fees pursuant to Minn. Stat. § 47.59, Subd. 14(g).

37.    Class members are entitled to declaratory judgment that the above fees may not be assessed and/or capitalized, that the excess interest resulting from those fees is uncollectible, reforming the contracts of class members accordingly, and enjoining Wells Fargo from attempting to collect excess loan charges.

## SECOND CAUSE OF ACTION
## MINN. STAT. § 48.195

38.    This Second Cause of Action is alleged in the alternative to the First Cause of Action.

39.    Plaintiff realleges paragraphs 1 through 22 above.

40.     The loan origination fees, service fees and/or insurance charges described above constitute interest for purposes of Minn. Stat. § 48.195.

41.     Minn. Stat. § 48.195 limits interest that may be charged by a national bank to "4 ½ percent in excess of the discount rate, including any surcharge thereon, on 90-day commercial paper in effect at" the local federal reserve district on the date of closing. That rate, in the case of Lewis's loan, was 4.7%.

42.     When one or more of the fees described above are treated as interest the effective interest rate on Lewis' loan exceeds 4.7%.

43.     Lewis' loan and the loans of class members exceed the maximum permitted by Minn. Stat. § 48.195.

44.     To the extent they have paid or been assessed interest in excess of that permitted by Minn. Stat. § 48.195 Plaintiff and class members have suffered monetary injury. Class members are entitled to declaratory judgment that the above fees may not be capitalized and the excess interest resulting from those fees is uncollectible, reforming the contracts of class members accordingly, and enjoining Wells Fargo from attempting to collect excess loan charges.


### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

45.     Plaintiff realleges paragraphs 1 through 22 and 31 through 44 above.

46.   A lender is entitled to capitalize charges only to the extent permitted by applicable law and to collect interest only at the annual percentage rate reserved in the contract.

47.   Wells Fargo has breached its contract with Lewis and the class members by assessing impermissible fees and capitalizing those fees and/or charging interest at an annual percentage rates in excess of that agreed to by the parties in their loan contracts. In the case of Lewis in excess of 2.723%.

48.   As a result of the above conduct Wells Fargo is also indebted to Lewis and members of the Class in the amount of all excess interest assessed.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT AND ACCOUNTING

50.   Plaintiff realleges paragraphs 1 through 22 and 31 through 44 above.

51.   As a result of the above described conduct Wells Fargo has been unjustly enriched in the sum of any interest charged on all mortgage insurance premiums and servicing fees unlawfully added to the principal amount of the loans of the class members of and must refund said charges to the members of Class.

52.   Plaintiff and the members of the class are entitled to an accounting of all such fees and charges.

## FIFTH CAUSE OF ACTION
## 12 U.S.C. § 85

53.   Plaintiff realleges  paragraphs 1 through 22 and 31 through 52 above.

54.   The above described conduct constitutes a violation of 12 U.S.C. § 85.

55.    As a result of the above described conduct Wells Fargo has forfeited its right to collect any interest in excess of the maximum lawful rate. Plaintiff and members of the Plaintiff Class are entitled to recover twice the excess interest assessed on their loans in the two years proceeding commencement of this action pursuant to 12 U.S.C. § 86.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and members of the Plaintiff Class, respectfully requests relief from this Court as follows:

1.    Certification of this case as a class action on behalf of the proposed class, designation of Plaintiff as class representative and plaintiff's counsel as class counsel;

2.    Judgment in favor of the Plaintiff and members of the Class  against Wells Fargo on the First, Second, Third, and Fourth Causes of Action in the amount of their actual damages;

3.    Judgment in the favor of the Plaintiff and members of the Class granting equitable relief  against Wells Fargo on the  First, Second, third, and Fourth Causes of Action declaring the conduct described therein to be unlawful and the charges at issue unenforceable and uncollectable;

4.    Judgment in favor the Plaintiff and the Class against Wells Fargo on the Fifth Cause of Action for statutory damages in an amount to be determined by the Court equal to twice any excess interest assessed or collected;

5.   An award of reasonable costs and attorneys fees pursuant to Minn. Stat. §
47.59, Subd. 14(g);

6.   Equitable relief declaring the rights of the parties, enjoining Wells Fargo
from collecting excess charges and/or interest, reforming the parties' contracts to account
for the excess loan charges, and requiring Wells Fargo to account for all excess charges
assessed.

7.   Such other and further relief as the Court may deem just, equitable and
appropriate.

Dated:  May 18, 2011              **CROWDER TESKE, PLLP**

                                 *s/ William H. Crowder*
                                 William H. Crowder (#20102)
                                 Vildan A. Teske (#241404)
                                 Marisa C. Katz (#389709)
                                 222 South Ninth Street, Suite 3210
                                 Minneapolis, Minnesota  55402
                                 (612) 746-1558


                                 **RICHARD J. FULLER**
                                 **Attorney at Law**

                                 *s/ Richard J. Fuller*
                                 Richard J. Fuller (#32669)
                                 400 South Fourth Street
                                 Suite 202
                                 Minneapolis, MN  55415
                                 (612) 294-2600 Phone
                                 (612) 294-2640 Fax

#2775