UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ann D. Lewis, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A.,<br><br>    Defendant. | Civil No. 11-1286 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Richard J. Fuller, Attorney at Law, 400 South Fourth St., Suite 202, Minneapolis, Minnesota 55415; and Marisa C. Katz, Vildan A. Teske, and William H. Crowder, Crowder Teske, PLLP, 222 South Ninth St., Suite 3210, Minneapolis, Minnesota 55402; for Plaintiff.

Charles F. Webber and Ellen B. Silverman, Faegre & Benson LLP, 90 South Seventh St., Suite 2200, Minneapolis, MN 55402, for Defendant Wells Fargo Bank, N.A.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. No. 5]. For the reasons discussed in this Court's Order dismissing Taft v. Wells Fargo Bank, N.A., Civil No. 10-2084 [Doc. No. 70], and for the reasons stated below, the Court grants the Motion to Dismiss and dismisses the Amended Complaint [Doc. No. 2] with prejudice.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ann D. Lewis entered into a reverse mortgage loan with Defendant Wells Fargo for her home in Bloomington, Minnesota. She contends that this reverse mortgage

violated several Minnesota statutes, a federal law, and constituted a breach of contract and unjust enrichment. She also seeks to represent a class of similarly situated individuals.

Reverse mortgages, or Home Equity Conversion Mortgages ("HECM"), are not an uncommon way for older people to reap the benefits of the equity they have in their homes. Congress specifically encouraged reverse mortgages by authorizing the Department of Housing and Urban Development ("HUD") to insure such mortgages through a program administered by the Federal Housing Administration ("FHA").

Under HUD's reverse mortgage program, a homeowner over the age of 62 can receive what is essentially a home equity loan that the homeowner does not have to pay back. Then, on the sale of the home or the death of the homeowner, the lender is repaid the amount of the loan with interest, and any remaining equity goes either to the homeowner or to the homeowner's estate. The interest on the reverse mortgage is put back into the principal amount of the loan according to federal law. 24 C.F.R. §§ 206.25(e), 206.19(e). Thus, for example, an older homeowner whose home is worth $200,000, and who owns the home free of any encumbrances, can receive a reverse mortgage for all or a portion of that $200,000, and can receive those proceeds either as a monthly annuity or a lump-sum payment.

At issue are three types of fees Wells Fargo charged Plaintiff: origination fees, servicing fees, and mortgage insurance charges. The parties do not dispute that Wells Fargo charged these fees, or that, rather than paying cash for the fees, Plaintiff opted to

borrow the money for the fees, so that the amount of the fees was added to the principal balance of Plaintiff's reverse mortgage loan.  Nor do the parties dispute the amount of the fees charged, and Plaintiff does not contend that charging such fees was in itself improper.  Rather, the crux of her Complaint is that, by adding these fees to the principal loan amount, Wells Fargo charged an effective interest rate that was higher than the parties' agreement and higher than Minnesota law allows.  Plaintiff also contends that Minnesota prohibits including these types of fees in the principal loan amount.  (See Am. Compl. ¶ 2 [Doc. No. 2]) ("Plaintiff brings this action . . . for Well Fargo's inclusion of insurance premiums, excessive servicing fees, loan origination fees, and/or similar charges in the principal amount of its loans in violation of applicable law.").)

The Amended Complaint raises five claims.  The first two causes of action contend that Wells Fargo violated Minnesota law by including the charges in the principal balance of the loan.  The third cause of action claims that Wells Fargo breached its contract with Plaintiff by charging interest in excess of that provided in the loan documents.  The fourth cause of action is a claim of unjust enrichment, and the fifth contends that Wells Fargo violated the National Bank Act, 12 U.S.C. § 85.

## II.   DISCUSSION

### A.   Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Amended Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187

(8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, <u>Hanten v. Sch. Dist. of Riverview Gardens</u>, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990).

**B.      Preemption**

The question in this case is whether a state may, in the context of fixing interest rates that are applicable to a reverse mortgage loan, also define what constitutes interest. The National Bank Act ("NBA") allows national banks to charge their customers interest at the rate allowed by the state in which the bank is located. 12 U.S.C. § 85; <u>Smiley v. Citibank (South Dakota), N.A.</u>, 517 U.S. 735 (1996). There is no dispute that, because of the interplay between the National Housing Act ("NHA"), the National Bank Act, and the regulations promulgated under both laws, a state may determine what rate of interest may be charged by a bank offering a federally insured reverse mortgage loan. The dispute is whether the state may also determine what charges are defined as interest.

**1.      Preemption Opt-Out**

Plaintiff contends that the Court need not determine whether any of the state statutes on which the Second Amended Complaint relies are preempted because the parties have opted out of any possible federal preemption.

**a.      The Agreements**

Plaintiff's first argument is that the parties have "opted out" of any possible preemption because the choice-of-law provision in the loan agreement provides that the

parties' contract will be governed by Minnesota law. But the choice-of-law provision on which Plaintiff relies does not choose solely Minnesota law. Rather, that provision states that the agreement will be governed by "Federal law and the law of the jurisdiction in which the Property is located." (Loan Agreement § 6.4, at WF20 [Doc. No. 8-1].) Thus, even assuming that the parties could contract out of federal preemption,[1] the choice-of-law provision cannot be used to avoid a preemption analysis.

### b. State Opt-Outs under the NHA

Plaintiff next argues that Minnesota has opted out of the National Housing Act, so that the regulations allowing banks to include the disputed charges in the principal amount do not apply in Minnesota. The NHA sets limits on "the amount of interest which may be charged" by a bank in a real estate transaction under the NHA, and provides that state laws purporting to limit "the amount of interest which may be charged" do not apply to NHA mortgages. 12 U.S.C. § 1709-1a(a). However, the NHA allows states to opt out of this limitation, by enacting a law after June 30, 1976, expressly limiting "the amount of interest which may be charged." Id. § 1709-1a(b).

Plaintiff contends that Minnesota has, on four occasions, opted out of the NHA's interest-rate limits. Minn. Stat. §§ 47.203, 47.58, 47.59, and 48.195. Indeed, § 47.58 specifically addresses the interest rate allowed for reverse mortgage loans. Id. § 47.58,

---

[1] This is a doubtful proposition. See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 289 U.S. 468, 490 (1989) (Brennan, J., dissenting) ("Choice-of-law clauses simply have never been used for the purpose of dealing with the relationship between state and federal law.")

5

subd. 5.[2] Further, Plaintiff argues, by opting out of the NHA's interest-rate limits, Minnesota has also interposed the right to determine on what types of fees and charges banks may charge that state-prescribed interest rate. According to Plaintiff, Minnesota has defined what constitutes principal and what constitutes interest, so that charges such as those at issue—mortgage insurance charges, servicing fees over $50 per year, and origination fees—cannot be added to the principal of mortgage loans and interest charged thereon. Id. § 47.59, subd. 6.

Plaintiff's interpretation of the NHA opt-out provision is overbroad. The NHA specifically allows states to opt out of the NHA's interest rate, or "the amount of interest which may be charged." 12 U.S.C. § 1709-1a(b). It does not purport to allow states to opt out of all NHA regulations, and such a reading of the statute leads to absurd results. As discussed above, the NHA made reverse mortgage loans possible. It would be illogical for Congress to authorize banks to enter into reverse mortgage loans pursuant to strict national standards but then allow each state to set its own requirements for what may be included or not included in the principal balance of those loans. Moreover, Plaintiff points to no statute or regulation that recognizes a state's right to opt out of all NHA regulations, and the Court has found none. The Court will not define the statute's statement regarding "the amount of interest" to also include "the definition of what constitutes interest." Plaintiff's contention that Minnesota has opted out of federal

---

[2] This section sets the maximum interest rate for reverse mortgage loans at three percentage points above the posted yield on 30-year conventional fixed-rate mortgages or 15.75%, whichever is less. See Minn. Stat. § 47.20, subd. 4a.

preemption is without merit.

        **c.**      **National Bank Act**

Plaintiff's final argument regarding preemption is that the National Bank Act allows national banks to choose to be governed by state interest rate limits, 12 U.S.C. § 85, and that, having done so, Wells Fargo is bound not only by those state interest rate limits but by the state definitions of interest. (Pl.'s Opp'n Mem. at 6.) As discussed more fully below in the context of Plaintiff's breach of contract claim, the parties disagree about the relevant interest rate to which Wells Fargo is bound to comply. According to Plaintiff, Minnesota caps the interest rate on transactions such as this reverse mortgage loan at 7%. Minn. Stat. § 48.195. Wells Fargo contends there is no limit on the rate of interest under Minnesota law. Minn. Stat. § 334.01, subd. 2.

Whatever the pertinent interest rate is, however, Plaintiff cannot establish that the fact that the NBA allows a bank to choose a state interest rate means that the bank must also be bound by how that state defines interest. Congress intended for the NBA to have the broadest possible preemptive sweep, and thus this Court is bound to view every state requirement that purports to regulate national banks with the scepticism the NBA's preemptive scope requires. But even aside from the strong presumption of preemption in the NBA, the regulations make clear that "the limitations on charges that comprise rates of interest on loans by national banks are determined under federal law." 12 C.F.R. § 34.4(a) n.1. In other words, states may prescribe interest rates, but state law does not govern the definition of interest for national banks under the NBA. Plaintiff's contention

that Wells Fargo must be bound by state definitions of interest because it chose to be bound under the NBA's state interest-rate provision is without merit.

### 2. Preemption Analysis

Having determined that the parties have not opted out of the preemption analysis, the Court must now determine whether the state statutory provisions on which Plaintiff relies are preempted by federal law.

As an initial matter, and as discussed briefly above, there can be no doubt that Congress intended the NBA to displace state laws purporting to regulate a national bank's liability for alleged overcharges.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10 (2003) ("Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'") (quoting Tiffany v. Nat'l Bank of Mo., 85 U.S. (18 Wall.) 409, 412 (1873)).  Indeed, the purpose of the NBA, in part, was to limit the exposure of national banks "to the hazard of unfriendly legislation by the States." Tiffany, 85 U.S. at 413.  Thus, the NBA is one of the few federal statutes considered to completely preempt the field.  Beneficial, 539 U.S. at 10-11.  It is within this strong preemptive framework that the Court must analyze the various federal regulations and state statutes at issue in the context of Plaintiff's claims under those statutes.

Federal regulations require the payment of a mortgage insurance premium of 2% of the loan amount at the time of closing.  24 C.F.R. §§ 206.105(a); 206.103.  The

regulations contemplate the borrower either borrowing the money for this initial insurance premium payment, in which case that money logically would be added to the principal balance, or making the payment in cash. Id. § 206.25(a). The regulations further specify that a monthly mortgage insurance premium payment "shall be added to the mortgage balance." Id. § 206.105(b). The terms of the loan agreement specified that Plaintiff would borrow the initial mortgage insurance premium amount from Wells Fargo, and that Wells Fargo would then include the amount in the principal balance of the loan. (Loan Agreement §§ 1.2, 1.6.)

Wells Fargo also charged Plaintiff an origination fee, which federal law allows to be paid either in cash "or through an initial payment under the mortgage." 24 C.F.R. § 206.31(a)(1). Thus, Wells Fargo included the amount of the origination fee in the principal balance. Finally, Wells Fargo charged a servicing fee of $35 per month pursuant to federal regulations. Id. § 206.207(b). This regulation requires that the amount of the servicing fee be "set aside as a portion of the principal limit." Id.

Minnesota law, on the other hand, sets forth what "additional charges may be included in the principal amount of the loan." Minn. Stat. § 47.59, subd. 6. That subdivision does not allow including mortgage insurance such as that at issue here in the principal amount of the loan. See id. subd. 6(a)(6) (allowing "charges for other benefits, including insurance, conferred on the borrower . . ." to be included in the loan's principal amount). The subdivision also prohibits including more than $50 per year in servicing fees. Id. subd. 6(c)(1). Plaintiff further contends that the Minnesota statutory framework

depends on common-law definitions of interest, and that the common law defines charges such as origination fees, servicing fees, and mortgage insurance premiums as interest.

Plaintiff argues that the Court must apply Minnesota's definition of interest because the parties have not made a written election to apply other statutes. Minnesota law provides that a bank may elect to "make an extension of credit" under other statutory authority, but must "specify in the promissory note, contract, or other loan document the section under which the extension of credit is made." Minn. Stat. § 47.59, subd. 2. There is no dispute that Wells Fargo did not specify any applicable Minnesota statute in the loan documents here.

> The NBA regulations provide:
>
> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans . . . without regard to state law limitations concerning . . . [r]ates of interest on loans.

12 C.F.R. § 34.4(a)(12). Plaintiff attempts to limit the preemptive scope of this section by focusing on the introductory statement: "[e]xcept where made applicable by Federal law." According to Plaintiff, this introduction should be read to mean that where other federal laws allow the incorporation of state laws regarding such things as interest rates and what constitutes interest, the preemptive sweep of § 34.4 does not apply. But even if state interest rates constituted something "made applicable by federal law," the regulation clearly prohibits state definitions of interest from applying to national banks: "The limitations on charges that comprise rates of interest on loans by national banks are

determined under Federal law." Id. § 34.4(a)(12) n.1.

Plaintiff points to another regulation as ostensibly allowing the states to define what constitutes interest. 12 C.F.R. § 7.4001 defines "interest" and provides that the "Federal definition of the term "interest" in paragraph (a) of [§ 7.4001] does not change how interest is defined by the individual states . . . solely for purposes of state law." Id. § 7.4001(c). Plaintiff insists that this provision means that state definitions of what constitutes interest apply to the loans at issue here. But given § 34.4(a)(12)'s express preemption of state definitions of interest, such a reading of § 7.4001(c) would be strange indeed. The preemptive scope of § 34.4(a) is clear: all state laws purporting to regulate the rates of interest, and specifically state laws that purport to limit charges "that comprise rates of interest," are preempted by federal law. Id. § 34.4(a)(12) n.1.

Accordingly, Plaintiff's claims that Wells Fargo violated state laws and the National Bank Act by including payments for mortgage insurance, origination fees, and servicing fees in the principal balance of her reverse mortgage loan must be dismissed.

## C. Breach of Contract

Plaintiff contends that Wells Fargo breached the parties' contract by charging more interest than the agreement allowed. To the extent her argument on this point requires the Court to adopt the Minnesota definition of what can be included in the principal balance of the loan, however, the breach of contract claim fails. The contract provided that Wells Fargo would include the fees at issue here in the principal balance of Plaintiff's reverse mortgage loan. Wells Fargo complied with all of those terms and

11

Plaintiff's breach of contract claim fails.

Plaintiff also contends that a document she received, entitled "Final Loan Terms," reflect an "expected/fully indexed" interest rate of 5.26%, which is significantly higher than the 2.723% to which the parties agreed. (App. at WF57 [Doc. No. 8-1].) However, the parties did not agree to a static interest rate of 2.723%. Rather, the parties agreed to an initial interest rate of 2.723% that would change monthly thereafter, not to exceed 12.723%. (See id. at WF22 (Adjustable Rate Note) ¶ 2 ("Interest will be charged on unpaid principal at the rate of [2.723%] per year . . . . The interest rate may change in accordance with Paragraph 5 of this Note."); id. ¶ 5 (providing for maximum interest rate of 12.723%) [Doc. No. 8-1].) Plaintiff is therefore incorrect as to what the contract required.

Plaintiff also argues that the 5.26% rate disclosed in the Final Loan Terms is higher than the initial index rate (2.723%) to which the parties agreed in the Note itself. At the Court's request, the parties submitted additional briefing on the issue. [Doc. Nos. 15, 18.] Wells Fargo explained that the "expected/fully indexed" rate in the Final Loan Terms is a HUD-required disclosure, 24 C.F.R. § 206.3, representing the lender's estimate of what the average future index rate will be on the reverse mortgage using widely accepted interest-rate benchmarks. (Def.'s Mem. at 3 [Doc. No. 15].) Wells Fargo also notes that there can be no "effective" rate of interest for Plaintiff's loan. Because the interest on the loan adjusts monthly according to industry benchmarks that are not predictable in advance, and because her reverse mortgage loan accrues more

interest-bearing principal over the life of the loan, it is impossible to predict with any accuracy the actual rate of interest she will be charged. (Id. at 2-3.)

Plaintiff's response to this argument is that it should be possible to predict an effective interest rate, just as it is possible to convert a monthly interest rate into an annual rate. (Pl.'s Mem. at 2 [Doc. No. 18].) But this argument misses the point. It is possible to convert a known monthly rate into an annual rate. It is not possible to convert an unknown, or adjustable, monthly rate, such as that used to calculate Plaintiff's future loan balances, into an annual rate. The best the lender can do is offer an expected rate, i.e., what the lender expects the average interest to be over the life of the loan, based on the interest rate margin and current industry benchmarks.

Plaintiff has not established that Wells Fargo breached its contract with her by charging more interest than the contract allowed. Her breach of contract claim fails.

D.     **Unjust Enrichment**

Under Minnesota law, where there is an express contract, no claim for unjust enrichment is cognizable. "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." U.S. Fire Ins. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1982). Plaintiff's only argument that the contract is invalid is that the contract allowed Wells Fargo to include fees in the principal amount in alleged violation of state law. But that argument is without merit, and the presence of a valid agreement therefore precludes a claim for unjust enrichment. This claim is dismissed.

E.     **Conclusion**

Plaintiff has failed to plausibly allege that Wells Fargo violated state or federal law.  Her Amended Complaint must be dismissed.

### III.  ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Wells Fargo Bank's Motion to Dismiss [Doc. No. 5] is **GRANTED**; and

2. The Amended Complaint [Doc. No. 2] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   November 4, 2011                               s/Susan Richard Nelson
                                                        SUSAN RICHARD NELSON
                                                        United States District Judge